UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

FLORENCIO BUENO,

     Petitioner,

v.                                       CASE NO. 6:06-cv-1198-Orl-18GJK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

     Respondents.

_____

## ORDER

Petitioner, through counsel, initiated this action for habeas corpus relief pursuant

to 28 U.S.C. § 2254 (Doc. No. 1, filed Aug. 11, 2006).  Upon consideration of the petition, the

Court ordered Respondents to show cause why the relief sought in the petition should not

be granted. (Doc. No. 5.)  Thereafter, Respondents filed a response to the petition for writ

of habeas corpus in compliance with this Court's instructions and with the *Rules Governing*

*Section 2254 Cases in the United States District Courts* (Doc. No. 6, filed Sept. 26, 2006).

Petitioner filed a reply to the response (Doc. No. 9, filed Oct. 18, 2006).

Petitioner asserts four claims for relief in his habeas petition.  Petitioner alleges in

his first three claims that the trial court violated his due process rights by: (1) failing to

appoint a duly qualified interpreter; (2) ordering trial counsel to act as his interpreter; and

(3) failing to ensure that Petitioner understood the substantial assistance agreement.

Petitioner's fourth claim is that he received ineffective assistance of counsel because his counsel acted as both interpreter and counsel. (Doc. No. 1 at 5-10.)

I.    **Facts and Procedural History**

The State of Florida (the "State") charged Petitioner with one count of trafficking in 200 or more grams of cocaine. (App. A at 18.) Petitioner executed a plea agreement written in Spanish, his native language, indicating that he was pleading *nolo contendere* to the charge. (App. A at 52-53.) Petitioner also executed a substantial assistance agreement written in English indicating that Petitioner was pleading *guilty* to two counts; trafficking in 200 grams or more of cocaine (count 1), and sale/delivery of cocaine (count 2). (App. A at 54.) (Doc. No. 2-2 at 4-9.) The substantial assistance agreement provided that if Petitioner provided substantial assistance to the State, he would receive a sentence less than the mandatory minimum of seven years. *Id.* The substantial assistance agreement further provided that if Petitioner did not render substantial assistance, but appeared for sentencing, he would receive ten years in the Department of Corrections, followed by five years of supervised probation and a $100,000 fine. *Id.* At his plea hearing, Petitioner entered a plea of guilty to the charge of trafficking in 200 grams or more of cocaine.[1] (App. A at 99-107.) Adjudication was withheld for nine months to allow Petitioner to perform under the substantial assistance agreement. *Id.* at 105.

---

[1] The Court notes that Petitioner was never formally charged with nor did he plead guilty to sale/delivery of cocaine (count two) as was expressed in his substantial assistance agreement.

2

Petitioner did not provide substantial assistance and failed to appear in court on the date of his sentencing. *See* App. A at 3. A *capias* was issued for his arrest (App. A at 57), and he was sentenced eight months later. *Id.* at 1. At Petitioner's sentencing, the court heard from the State and four witnesses presented by the defense as well as Petitioner himself. *Id.* at 1-14. Petitioner testified that his failure to appear at his original sentencing was inadvertent. *Id.* at 11. Although the State argued that a sentence of fifteen years was appropriate (*Id.* at 3), the trial court sentenced Petitioner to a ten-year term imprisonment to be followed by five years of probation. *Id.* at 13. He also was ordered to serve no less than the minimum mandatory of seven years and pay the mandatory $100,000 fine. *Id.* Petitioner did not move to withdraw his plea.

On direct appeal, Petitioner's appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). (App. B-1.) Petitioner filed a supplemental brief on direct appeal (App. B-2), arguing that his constitutional right to due process was violated when the trial court failed to appoint a qualified interpreter for him at his plea hearing, ordered trial counsel to act as his interpreter, and failed to ensure that he understood the substantial assistance agreement. *Id.* at 8. Petitioner further argued that appointing trial counsel to act as his interpreter resulted in ineffective assistance of counsel. *Id.* at 12. On May 16, 2006, the state appellate court *per curiam* affirmed. (App. E.); *see also Bueno v. State*, 929 So. 2d 1076 (Fla. 5th DCA 2006.) Thereafter, Petitioner filed the instant application for writ of habeas corpus.

3

## II.   The Governing Legal Principles

Because Petitioner filed his petition after April 24, 1996, this case is governed by 28

U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"). *Penry v. Johnson*, 532 U.S. 782, 792 (2001); *Henderson v. Campbell*, 353 F.3d 880,

889-90 (11th Cir. 2003). The AEDPA "establishes a more deferential standard of review of

state habeas judgments," *Fugate v. Head*, 261 F.3d 1206, 1215 (11th Cir. 2001), in order to

"prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect

to the extent possible under the law." *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see also Woodford

v. Visciotti*, 537 U.S. 19, 24 (2002) (recognizing that the federal habeas court's evaluation of

state-court rulings is highly deferential and that state-court decisions must be given the

benefit of the doubt).

### A.   Standard of Review Under the AEDPA

Pursuant to 28 U.S.C. § 2254(a), as amended by the AEDPA, "a district court shall

entertain an application for writ of habeas corpus in behalf of a person in custody pursuant

to the judgment of a State court only on the ground that he in custody in violation of the

Constitution or laws or treaties of the United States." Habeas relief may not be granted

with respect to a claim adjudicated on the merits in state court unless the adjudication of

the claim:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined
> by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The phrase "clearly established Federal law," encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

"[S]ection 2254(d)(1) provides two separate bases for reviewing state court decisions; the 'contrary to' and 'unreasonable application' clauses articulate independent considerations a federal court must consider." *Maharaj v. Secretary for Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005). The meaning of the clauses was discussed by the Eleventh Circuit Court of Appeals in *Parker v. Head*, 244 F.3d 831, 835 (11th Cir. 2001):

> Under the "contrary to" clause, a federal court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the United States Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the United States Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Even if the federal court concludes that the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *Id.*

Finally, under § 2254(d)(2), a federal court may grant a writ of habeas corpus if the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." A determination of a factual issue made by a state court, however, shall be presumed correct, and the habeas petitioner shall

have the burden of rebutting the presumption of correctness by clear and convincing evidence. *See Parker*, 244 F.3d at 835-36; 28 U.S.C. § 2254(e)(1).

## B.   Exhaustion and Procedural Default

One procedural requirement set forth in the AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless the petitioner has exhausted all means of available relief under state law. 28 U.S.C. § 2254(b); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842-22 (1999); *Picard v. Connor*, 404 U.S. 270, 275 (1971). Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -
>
> (A)   the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)   (i)   there is an absence of available State corrective process; or
>        (ii)   circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1).

Thus, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Id.* at 735 n.1. In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Duncan v.*

*Henry*, 513 U.S. 364, 365 (1995) (citing *Picard*, 404 U.S. at 275-76) (internal quotations marks

omitted). The petitioner must apprise the state court of the federal constitutional issue, not

just the underlying facts of the claim or a similar state law claim. *Snowden v. Singletary*, 135

F.3d 732 (11th Cir. 1998). The United States Supreme Court has observed that "Congress

surely meant that exhaustion be serious and meaningful." *Keeney v. Tamayo-Reyes*, 504 U.S.

1, 10 (1992). Furthermore, the Court explained:

> [c]omity concerns dictate that the requirement of exhaustion is not satisfied
> by the mere statement of a federal claim in state court. Just as the State must
> afford the petitioner a full and fair hearing on his federal claim, so must the
> petitioner afford the State a full and fair opportunity to address and resolve
> the claims on the merits.

*Id.; see also Henderson*, 353 F.3d at 898 n.25 ("Both the legal theory and the facts on which the

federal claim rests must be substantially the same for it to be the substantial equivalent of

the properly exhausted claim.")

Procedural default will be excused only in two narrow circumstances. First, a

petitioner may obtain federal review of a procedurally defaulted claim if he can show both

"cause" for the default and actual "prejudice" resulting from the default. *Henderson v.

Campbell*, 353 F.3d 880, 892 (11th Cir. 2003). "To establish 'cause' for procedural default, a

petitioner must demonstrate that some objective factor external to the defense impeded the

effort to raise the claim properly in the state court." *Wright v. Hopper*, 169 F.3d 695, 703

(11th Cir. 1999). To establish "prejudice," a petitioner must show that there is at least a

reasonable probability that the result of the proceeding would have been different.

*Henderson*, 353 F.3d at 892 (citations omitted).

The second exception, known as the "fundamental miscarriage of justice," only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray v. Carrier*, 477 U.S. 478, 496 (1986). Actual innocence means factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). In addition, "'[t]o be credible,' a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup*, 513 U.S. at 324).

## III. Analysis

### A. Claims One, Two, and Three

#### 1. Procedural Default

Petitioner raised claims one, two, and three on direct appeal, *See* App. B, and the State argued that the claims were procedurally barred because (a) there was no fundamental error and (b) Petitioner's trial counsel did not object to translating for Petitioner, did not inform the trial court that he was not competent to act as the requested interpreter, and did not object to the trial court's failure to place him under oath. (App. C at 5.) The Fifth District Court of Appeals *per curiam* affirmed Petitioner's sentence and conviction. (App. E.) In their response to Petitioner's federal habeas petition, Respondents assert that Petitioner's claims are procedurally barred from review by this Court. (Doc. No. 6 at 6-7.)

There are two prerequisites to federal habeas review: (1) "the applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated," and (2) "the applicant must have presented his claims in state court in a procedurally correct manner." *Upshaw v. Singletary*, 70 F.3d 576, 578-79 (11th Cir. 1995) (citations omitted). This means that "[f]ederal courts are precluded from addressing claims that have been held to be procedurally defaulted under state law." *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993) (citing *Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991)). Additionally, "federal courts may not address claims that have not been presented in state court if the state court would have found the claims to be procedurally defaulted, unless the petitioner is able to show both cause for the default and prejudice resulting therefrom." *Id.* (citing *Teague v. Lane*, 489 U.S. 288, 297-99 (1989)).

In this case, if the Fifth District Court of Appeals had held Petitioner's claims to be procedurally defaulted, this Court would enforce that bar. However, this case is complicated by the fact that Petitioner presented his claims to the state appellate court, but the court summarily affirmed his conviction and sentence without discussing the federal grounds at issue. A federal court "may not assume that had the state court issued an opinion, it would have ignored its own procedural rules and reached the merits of [the] case . . . In fact, the most reasonable assumption is that had the state court ruled, it would have enforced the procedural bar." *Tower*, 7 F.3d at 211

Even though the appellate court was silent as to its reasons for affirming Petitioner's conviction and sentence, this Court will not assume that the court did not observe the

9

applicable procedural bar.   Instead, the Court will assume that had the state court addressed Petitioner's claims, it would have enforced the procedural bar.  *See Kight v. Singletary*, 50 F.3d 1539, 1544 (11th Cir. 1995) (stating that "a claim not objected to at trial is not preserved for appeal and cannot be raised in a postconviction proceeding"). Therefore, this Court concludes that claims one, two, and three are procedurally barred. However, this Court will address the merits of these claims in the alternative.

### 2.   Merits of Petitioner's Claims

Petitioner contends that his due process rights were violated when the trial court failed to appoint a duly qualified interpreter at his plea hearing (claim one), appointed trial counsel to act as interpreter without being properly sworn (claim two), and failed to ensure that Petitioner understood the substantial assistance agreement (claim three).

The following exchange took place at Petitioner's plea hearing:

MR. IGLESIAS:   Your Honor, first order of business, Mr. Bueno does not speak any English. I don't know if the translator was brought up for him.   At pretrial we requested one.   He (indicating) can function in that capacity.

THE COURT:   I'm going to let you do this.

MR. IGLESIAS:   We're tendering plea as charged in the information. Mr. Bueno has filled out a plea form in Spanish and has signed it, and [it] is signed by I[sic], as well as Mr. George.  If I may approach?

THE COURT:   Yes. Okay.
Mr. Bueno, do you swear or affirm that the testimony you are about to give me is true?

DEFENDANT THROUGH MR. IGLESIAS:      Yes.

\* \* \*

10

THE COURT:          What is your true name?

DEFENDANT THROUGH MR. IGLESIAS:          Florencio Bueno.

THE COURT:          Where were you born?

DEFENDANT THROUGH MR. IGLESIAS:          Mexico.

THE COURT:          Are you a citizen of the United States?

DEFENDANT THROUGH MR. IGLESIAS:          No.

THE COURT:          Did you explain to your client he could be deported as a result of this offense?

MR. IGLESIAS:          He understands.

THE COURT:          Do you understand the charge?

DEFENDANT THROUGH MR. IGLESIAS:          Yes.

THE COURT:          Do you read Spanish?

DEFENDANT THROUGH MR. IGLESIAS:          Yes.

THE COURT:          Your plea form is written in Spanish, correct?

DEFENDANT THROUGH MR. IGLESIAS:          Yes.

THE COURT:          Did you read your plea form?

THE DEFENDANT:          Si.

THE COURT:          Discuss it with your attorney?

THE DEFENDANT:          Si.

THE COURT:          Your attorney speaks Spanish, correct?

THE DEFENDANT:          Si.

THE COURT:   Are you having any difficulty in either the dialect or anything about the Spanish translation?

DEFENDANT THROUGH MR. IGLESIAS:   No.

THE COURT:   Factual basis, please.

MR. GEORGE:   If this case had proceeded to trial, the State would be prepared to prove on November 12th of 2002, [an] undercover officer contacted codefendant Gustado to arrange for the purchase of cocaine.

Later on that day the agent met with codefendant. The agent asked to see the cocaine first. Gustado showed him the cocaine. The deal was done. Both defendants were arrested. The cocaine, 248.6 grams[sic].

Your Honor, this particular defendant has entered into a substantial assistance agreement with the Assistant State Attorney. I believe the original copy is in the court's possession now. That is calling for a guilty plea and set off for sentencing to provide substantial assistance.

I note that document is written in English and I would like to state it on the record it has been read to him in Spanish and he understood all of that, and that when he signed it he knew what he was signing.

THE COURT:   The substantial assistance agreement, Mr. Bueno, is written in English . . .

THE DEFENDANT:   Si.

THE COURT:   Did your attorney read this document to you completely?

THE DEFENDANT:   Si.

THE COURT:   In looking at the signature I cannot tell whether you signed this or not. Did you sign this agreement?

THE DEFENDANT:   Si.

12

THE COURT:          In signing this you acknowledge that you are in agreement with all the terms and conditions, correct?

THE DEFENDANT:          Si.

THE COURT:          I'm going to find this morning that you are alert and intelligent, you're satisfied with your lawyer, you understand the charge, read your plea form and understand it, correct?

THE DEFENDANT:          Si.

THE COURT:          As to the charge of trafficking in 200 grams or more of cocaine, how do you plead?

DEFENDANT THROUGH MR. IGLESIAS:          Guilty.

THE COURT:          Guilty. I accept your plea, find a factual basis to accept your plea. I'm going to withhold the imposition of adjudication at this time and allow you to remain at liberty under your present release status.

(App. A at 100-04.)

The Fifth District Court of Appeals' *per curiam* affirmance warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). This Court concludes that the state appellate court's silent affirmance of Petitioner's conviction and sentence was neither contrary to nor an unreasonable application of controlling Supreme Court precedent nor an unreasonable determination of the facts. *See* 28 U.S.C. § 2254(d).

"The United States Supreme Court has yet to recognize the right to a court-appointed interpreter as a constitutional one." *United States v. Johnson*, 248 F.3d 655, 663 (7th Cir. 2001). However, the Due Process Clause requires state courts conducting criminal trials to "proceed consistently with 'that fundamental fairness' which is 'essential to the

13

very concept of justice.'" *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998) (quoting *Lisenba v. California*, 314 U.S. 219, 236 (1941)). Failure to furnish effective interpretation may, in some circumstances, be a denial of due process. *See United States ex rel. Negron v. New York*, 434 F.2d 386 (2nd Cir. 1970).

Necessary to Petitioner's success in this case is the proposition that the trial court violated Petitioner's constitutional right to due process by failing to provide him with a court-appointed interpreter at his plea hearing and by ordering defense counsel to act in that capacity instead. However, in Florida and as a constitutional matter, the appointment of an interpreter for the accused is a matter resting in the discretion of the trial judge. *See* Fla. Stat. § 90.606; Fl. Crim. Practice & Procedure 14.11; *Bolender v. State*, 422 So. 2d 833 (Fla. 1982); *see also United States v. Edouard*, 485 F.3d 1324, 1337 (11th Cir. 2007) (stating that the appointment of an interpreter as a constitutional matter, is committed to the sound discretion of the trial judge). For the reasons set out below, this Court finds that the trial court did not violate Petitioner's due process rights.

Although Petitioner was not provided with a court-appointed interpreter, the trial judge, acting on defense counsel's request for an interpreter, provided Petitioner with effective interpretation by directing Petitioner's counsel, who is fluent in Spanish, to translate for him. Further, there is no indication that Petitioner's trial counsel was incapable of translating nor are there any allegations by Petitioner that his attorney did not accurately translate the plea colloquy. He only asserts that he did not "understand what happened at . . . [his] plea hearing." (Doc. No. 9 at 9.) In his affidavit, Petitioner states that

14

because he is Mexican and his attorney is Puerto Rican, he did not fully understand his attorney and just assumed he was acting in his best interest. *Id.* Petitioner does not argue that the outcome of his plea hearing would have been different had he been provided with a court-appointed interpreter.[2]

Moreover, the trial court did not deny Petitioner his due process rights by failing to inquire into his attorney's qualifications to act as interpreter and by failing to place his attorney under oath. First, Petitioner does not cite to any authority for his argument that there is a constitutional requirement that his attorney be sworn prior to acting as an interpreter, and this Court is unaware of any. While Florida law does provide that "[a]n interpreter shall take an oath . . . ," Respondents are correct in their argument that "Petitioner's challenge to the Florida courts' interpretations of the requirements of the Florida Statutes is not cognizable in a federal habeas petition." (Doc. No. 6 at 7); *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *see also Carrizales v. Wainwright*, 699 F.2d 1053, 1055 (11th Cir. 1983). This Court's review is limited to determining whether a petitioner's custody is in violation of federal law. *See* 28 U.S.C. § 2254(a); *Jones v. Goodwin*, 982 F.2d 464, 471 (11th Cir. 1993); *Krasnow v. Navarro*, 909 F.2d 451, 452 (11th Cir. 1990).

---

[2] The Court notes that Petitioner asserts he did not understand what his "specific duties were under the English substantial assistance agreement" and that had he known he would have contacted law enforcement to comply with the agreement. (Doc. No. 9 at 8.) This issue will be addressed *contra*.

However, even couched in terms of due process, Petitioner was not denied his constitutional rights. Even if the trial court had inquired into trial counsel's qualifications to act as an interpreter, there is no indication that the court would have found him to be unqualified. Petitioner's trial counsel is fluent in Spanish, and although he was not from Mexico (Petitioner's native country), there is no indication that the court would have appointed an interpreter who was. Furthermore, there is no evidence that the trial court's failure to place Petitioner's trial counsel under oath prior to translating, affected the outcome of the proceeding or denied Petitioner that fundamental fairness that was due to him under federal law. Petitioner stated under oath that he was not having any problems with either his counsel's dialect or anything about the Spanish translation. (App. A at 102.)

Petitioner also states that even though the trial court was aware he did not speak English, it addressed questions directly to him and he was told by his attorney to just agree with everything the judge said. (Doc. No. 9 at 9.) While it is difficult to understand what Petitioner means when he says the court addressed questions "directly to him," the Court construes this to mean that some questions were not translated for him before he answered. While it is easy to make this argument because, at first glance, the record has the appearance that Petitioner, and not his attorney, responded to some of the trial court's questions directly, this does not mean the questions were not translated for him. Based on the record, the more likely scenario is that after those particular questions were translated, Petitioner answered the court's questions himself instead of answering through his attorney.

Regarding Petitioner's third claim, that his due process rights were violated because the trial court failed to ensure he understood the substantial assistance agreement, Petitioner asserts that he was never provided a copy of the substantial assistance agreement in Spanish, he could not read or understand the English substantial assistance agreement, and the agreement was not translated or explained to him by his attorney. (Doc. No. 9 at 8.) He further states that he had no understanding of what his specific duties were under the substantial assistance agreement and that he did not know that he was supposed to contact law enforcement. *Id.* However, Petitioner does state that his attorney told him that the police would contact him. *Id.*

Petitioner took an oath at his plea hearing (App. A at 100), and testified that he could read Spanish, that his attorney could speak Spanish, and that he was not having any difficulty with the Spanish translation (App. A at 101-02). He also testified that his attorney read the substantial assistance agreement to him, that he understood the document, and that his signature acknowledged his agreement with the terms and conditions of the substantial assistance agreement. (App. A at 103-04.) Although Petitioner asserts that he did not fully understand his attorney because his attorney is Puerto Rican and he is Mexican (Doc. No. 9 at 9), Respondents are correct in their argument that Petitioner has failed to show that the English substantial assistance agreement was somehow translated erroneously.

Petitioner did not ask any questions and evidenced no indication that he did not understand the substantial assistance agreement. There is no indication on the record that

17

Petitioner raised a concern with the trial court concerning the sufficiency of his attorney translating for him or the adequacy of his attorney's translation. "By affirmatively responding to [the court's] inquiries during the plea and sentencing process and by failing to complain about . . . the quality of the translation services provided, [Petitioner's] claims are not credible." *Alvarez v. United States*, No. 8:07-cv-647, 2008 U.S. Dist. LEXIS 16587, at *22-23 (M.D. Fla. March 4, 2008).

Because claims one, two, and three are without merit, they must be denied.

### B.    Claim Four

Petitioner alleges that the trial court's appointment of his attorney to act as interpreter "resulted in ineffective assistance of counsel, placing trial counsel in an untenable position on several different significant levels . . .." (Doc. No. 2 at 11.) Petitioner raised this claim on direct appeal asserting ineffective assistance of counsel "apparent on the face of the record" (App. B), and the Fifth District Court of Appeal *per curiam* affirmed. (App. E.)

The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense.[3] *Id.* at 687-88. A court must

---

[3] In *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993), the United States Supreme Court clarified that the prejudice prong of the test does not focus solely on mere outcome determination; rather, to establish prejudice, a criminal defendant must show that counsel's

adhere to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id.* at 689-90. "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* at 690; *Gates v. Zant*, 863 F.2d 1492, 1497 (11th Cir. 1989).

As observed by the Eleventh Circuit Court of Appeals, the test for ineffective assistance of counsel:

> has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial. Courts also should at the start presume effectiveness and should always avoid second guessing with the benefit of hindsight. *Strickland* encourages reviewing courts to allow lawyers broad discretion to represent their clients by pursuing their own strategy. We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220-21 (11th Cir. 1992) (citation omitted). Under those rules and presumptions, "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994).

In support of this claim, Petitioner states that his attorney was placed in the "impossible position" of having to represent and translate for him at the same time, thus causing a conflict between his professional obligation to Petitioner and his duties as an interpreter to interpret the proceedings "fully and fairly". *Id.* Petitioner cites to *State v.*

---

deficient representation rendered the result of the trial fundamentally unfair or unreliable.

*Rios*, 539 P. 2d 900 (Ariz. 1975), wherein the defendants were ordered a new trial based on the appellate court's ruling that they were not provided with the continuous assistance of a competent interpreter during the entirety of their trial. In *Rios*, the defendants' attorney acted as interpreter for his clients during their trial after the court erroneously informed him that payment for an interpreter would be made from his fee as court-appointed attorney. The appellate court stated that "[f]or defense counsel to cross-examine witnesses, listen attentively to testimony and objections of the prosecuting attorney and hear rulings and remarks of the presiding judge and simultaneously render an accurate and complete translation to his three clients, is an impossible task. The effectiveness of defense counsel under those circumstances is obviously greatly impaired to the serious detriment of his clients' defense." *Id.* at 144.

First, the Court notes that Petitioner has only cited to state law in which to support his claim that he was denied the effective assistance of counsel. Petitioner has not shown that the appellate court's decision was opposite to that reached by the United States Supreme Court on a question of law and has cited no Supreme Court case that reached a different result on materially indistinguishable facts. *See Parker*, 244 F.3d at 835. Thus, the appellate court's ruling cannot be deemed contrary to Federal law. Regardless, the facts of *Rios* are greatly distinguishable from the facts of the instant case. Here, Petitioner's defense counsel was translating for Petitioner at his plea hearing, not at a trial. There was only one client, no witnesses to examine, no testimony to translate, and no objections by the prosecutor. This was not an "impossible task" for Petitioner's defense counsel.

Further, Petitioner asserts that this "conflict was demonstrated" when his trial counsel informed the court that Petitioner was pleading guilty when the plea agreement indicated that he agreed to plead nolo contendere,[4] and also when his trial counsel neglected to inform the court that Petitioner's substantial assistance agreement contained a "phantom charge" with which he was never charged. (Doc. No. 2 at 12.) As the State pointed out in its answer brief on Petitioner's direct appeal, this was likely nothing more than a scrivener's error on the plea form as no one caught the discrepancy between the written and oral pleas. (App. C.) Regardless, in light of the facts of this particular case, this Court is unable to conclude that Petitioner was denied effective representation. Even if Petitioner was able to demonstrate that his trial counsel's performance was deficient, which he has not, Petitioner has not shown that he was prejudiced by counsel's failure to inform the court of the discrepancies between his plea agreement, substantial assistance agreement, and oral plea. *See Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (A criminal defendant must show that counsel's deficient representation rendered the result of the trial fundamentally unfair or unrealiable).

Accordingly, this Court must deny Petitioner's claim of ineffective assistance of counsel.

---

[4] Petitioner's plea agreement, written in Spanish, indicated that Petitioner was pleading nolo contendere. Petitioner's substantial assistance agreement, written in English, indicated that Petitioner was pleading guilty. Finally, Petitioner entered an oral plea of guilty at his plea hearing.

**D.    Petitioner's Reply - Voluntary and Intelligent Plea**

In his Reply, Petitioner states that he did not "knowingly and voluntarily enter into [his] plea and substantial assistance agreement" because the trial court failed to appoint a qualified interpreter for him at his plea hearing. (Doc. No. 9 at 3.)  Respondents filed a motion to strike Petitioner's reply asserting that Petitioner's challenge to the voluntary nature of his plea is unexhausted because the claim was never properly presented to the appropriate state courts.  (Doc. No. 10, filed Oct. 20, 2006.)  Further, they state that Petitioner has until approximately June 2, 2008, to pursue a Rule 3.850, Florida Rules of Criminal Procedure, motion challenging the voluntary nature of his plea, or a Rule 9.141 of the Florida Rules of Appellate Procedure motion alleging ineffective assistance of appellate counsel. *Id.* at 2.

The Court notes that Petitioner presented this claim to the Court for the first time in his Reply without obtaining leave from this Court to amend his habeas petition. Respondents are correct that Petitioner's claim is unexhausted.  A review of the record indicates that Petitioner has not presented this claim before any state court.  Because Petitioner has failed to satisfy the exhaustion requirement of 28 U.S.C.  2254(b)(1), this Court may not consider Petitioner's claim. *See Duncan v. Henry*, 513 U.S. 364, 365 (1995) (In order to satisfy the exhaustion requirement, a state petitioner must "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights.").  Also, Petitioner's procedural default

will not be excused in this case because he has not shown "cause" and actual "prejudice" resulting from the default. *See Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

## IV.   Conclusion

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   The Petition for Writ of Habeas Corpus filed by Florencio Bueno is **DENIED**, and this case is **DISMISSED WITH PREJUDICE**.  The Clerk of the Court shall enter judgment accordingly.

2.   The Clerk of the Court is directed to close this case.

**DONE AND ORDERED** at Orlando, Florida, this ___ day of March, 2008.

_____
G. KENDALL SHARP
SENIOR UNITED STATES DISTRICT JUDGE

Copies to:
pslc 3/31
Counsel of Record
Florencio Bueno

23